```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                      LAREDO DIVISION


GRACIELA ELISERIO, ET AL.,    §
                              §
       Plaintiffs,            §
                              §      CIVIL ACTION L-05-04
v.                            §
                              §
FLOYDADA HOUSING AUTHORITY    §
                              §
       Defendant.             §
```

## MEMORANDUM & ORDER

Pending is Defendant Floydada Housing Authority's Motion to Transfer Venue.  (Doc. No. 12.)  On March 24, 2005, the Court ordered Plaintiffs and Defendant to supplement their submissions in light of *In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004). The parties have responded.  (Doc. Nos. 16, 18, & 19.)

## Factual Background

Plaintiffs are migrant farm workers whose permanent residences are in the Southern District of Texas.  Plaintiffs Graciela Eliserio and Jose Eliserio reside in the Laredo Division, and Plaintiffs Argeio Garza and Armandina Garza reside in the McAllen Division.

Defendant Floydada Housing Authority (FHA) is a government entity that owns and operates low-income housing in Floyd County, Texas, in the Northern District of Texas, Lubbock Division.

1

Defendant does not operate outside Floyd County and its principal offices are in Floydada, Texas.

From June to October 2004, Plaintiffs rented and occupied housing units at Defendant's housing facility in Floydada. In January 2005, Plaintiffs filed a complaint with this Court alleging Defendant provided housing that fails to meet federal and state safety and health standards in violation of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), a federal statute. *See* 29 U.S.C. §§ 1801-1872 (1999). Plaintiffs filed suit under the AWPA's private cause-of-action provision. *See* § 1854. They also filed claims under Texas state law for violations of their leases and the Texas Habitability Statute.

On February 25, 2005, Defendant filed a Motion to Dismiss for Improper Venue and Motion to Transfer Venue. Plaintiffs responded on March 9, 2005. (Doc. No. 13.) On April 15, 2005, the Court denied the Motion to Dismiss, because venue in Laredo is proper. (Doc. No. 14.) It determined that Lubbock, the division to which Defendant seeks transfer, would also be a proper venue. The Court now considers the parties' supplemental briefing on this issue.

## Discussion

Defendant argues that the action should be transferred to the Northern District of Texas, Lubbock Division, in the

interests of justice, because venue here is inconvenient. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2004).

The movant bears the burden of demonstrating that the Court should transfer the case. *Holmes v. Energy Catering Servs., LLC*, 270 F. Supp. 2d 882, 886 (S.D. Tex. 2003). The decision to transfer a case rests within the sound discretion of the Court, *id.*, and such decisions are reviewed under an abuse-of-discretion standard. *In re Volkswagen AG*, 371 F.3d at 203.

Under *In re Volkswagen AG*, the determination of convenience turns on a number of private and public interest factors, none of which are given dispositive weight.[1] *Id*. The private concerns include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id*. The public concerns include:

---

[1] Although these factors mirror those considered in forum non conveniens cases, district courts have more discretion to transfer under § 1404(a) than to dismiss on grounds of forum non conveniens. *Piper Aircraft v. Reyno*, 454 U.S. 235, 258 n.26 (1981).

3

(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary conflict-of-law problems involving application of foreign law. *Id*.

Although *In re Volkswagen* does not mention it, the Plaintiffs' choice of forum is an additional factor to be considered, but in and of itself is neither conclusive nor determinative. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

## Private Interest Factors

### Relative Ease of Access to Sources of Proof

Defendant argues that a Lubbock venue would provide easier access to several sources of proof.

First, Defendant argues that "witnesses, experts, or even jurors" could more easily access the Floydada housing facility if venue were in Lubbock. The facility is located less than sixty miles from Lubbock, and access to it is arguably important because the primary issue in the case is its living conditions. However, Defendant does not explain why venue would have any bearing on the ability of all interested parties to visit the facilities before trial. Nor do they explain why a jury would

4

likely visit the facility.  Indeed, Plaintiffs indicate that they will rely on photographs to prove the facility's conditions.  Defendant offers no reason why it would be unable to do the same.

Second, Defendants claim that its records would be more easily accessed if venue were in Lubbock.  However, "[w]hen considering a motion to transfer venue, the location of books and other records is usually given little weight, unless the documents are so voluminous that their transport is a major undertaking."  *Gonsalez Moreno v. Milk Train, Inc.*, 182 F. Supp. 2d 590, 598 (W.D. Tex. 2002) (citations and internal quotations omitted).  Defendants make no showing that the transport of its records would be a major undertaking.

Finally, all of Defendant's witnesses reside in the Northern District, a factor addressed below.

### Availability of Compulsory Process to Secure Witnesses

Defendant argues that compulsory process would be unavailable to secure attendance of three witnesses in the Southern District.  The witnesses are all employees of the U.S. Department of Agriculture (USDA) who inspected the FHA facilities at issue.  Defendant believes that they are a "source of a significant amount of information making the basis of Plaintiffs' suit."

A subpoena may be served "at any place within the district

of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection." FED. R. CIV. P. 45 (b)(2).  The USDA witnesses live in or near Lubbock and work out of Lubbock, more than 100 miles outside the Southern District (Doc. No. 18, Ex. A.).  However, Defendant fails to explain how the witnesses would help its case.  *See Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993).[2]  Plaintiffs have alleged that USDA notified Defendant of safety and health violations, which Defendant has failed to repair or remedy.  If so, these witnesses might be at least as beneficial to Plaintiffs.

Moreover, Plaintiffs observe that there is no reason to believe that these witnesses would be unwilling to attend a trial in this District, given that the USDA has an interest in FHA's compliance with housing standards.  Further, compulsory process may be available to secure the witnesses at trial, even if they must travel more than 100 miles from the place where they live or work, if the trial is within the same state as such places.  FED.

---

[2] "The moving party must do more than make a general allegation that certain key witnesses are needed.  The movant must specifically identify the key witnesses and outline the substance of their testimony." *Dupre*, 810 F. Supp. at 825 (internal citations omitted).

6

R. Civ. P. 45(c)(3)(A)(ii).  However, such a subpoena may be subject to an order to quash, if a nonparty would "incur substantial expenses to travel more than 100 miles to attend trial."[3]  Fed. R. Civ. P. 45(c)(3)(B)(iii).  Finally, the witnesses could be compelled to attend a pretrial deposition conducted somewhere within the 100-mile limit.  Fed. R. Civ. P. 45(b)(2).

### The Cost of Attendance of Willing Witnesses

Defendant plans to call five of its employees at trial, all of whom reside in Floyd County and make up FHA's total staff. The witnesses would provide testimony as to Plaintiffs' complaints, the care and maintenance of the units Defendant owns and operates, and the "financial aspects of the FHA which bear directly on Plaintiffs' complaints."  (Doc. No. 18, Ex. A.) Defendant claims that the travel expenses for all FHA employees to travel to and testify in Laredo would be a "serious financial burden."  *Id*.

"When the distance between an existing venue for trial of a

---

[3] However, if the party requiring the witness, "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated," the court may order the witness' appearance, "but only upon specified conditions."  Fed. R. Civ. P. 45(c)(3)(B)(iii).

7

matter and a proposed venue... is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen*, 371 F.3d at 204-205.  Defendant's witnesses would have to travel over 500 miles more to Laredo than if trial were in Lubbock, resulting in increased travel time, meal and lodging expenses, and time away from work and home.  *See id*. at 205.

In addition, Defendant claims it would have to "virtually shut down" its office if trial were in Laredo, thus harming its efficient operation.  (Doc. No. 18, Ex. A.)  Because all five of Defendant's employees would be needed at trial, Defendant would be left without staffing during this time.  The parties estimate that trial would last one week.  (Doc. No. 21.)  However, it is doubtful that all employees would be needed at all times during trial.

Plaintiffs respond that Defendant's costs of attendance of willing witnesses must be weighed against Plaintiffs' costs. Plaintiffs plan to call fourteen nonparty witnesses who are migrant workers and who lived in FHA housing, as well as family members who were present at the time that Plaintiffs lived in FHA housing.  Their testimony is relevant "because each and every family or individual encountered various problems and violations

8

that differed from others."[4]  (Doc. No. 16 at 2.)  Also, the testimony is necessary for "establishing a time period for when violations occurred... and whether the FHA took any action to remedy these problems at any time." *Id*.  The witnesses live in the Texas Rio Grande Valley, much closer to Laredo than Lubbock.  It would be similarly inconvenient for them to travel from their homes to Lubbock, over 400 miles further away than Laredo.[5]

The district court should not transfer any case "where the only practical effect is a shift of inconveniences from the non-moving party to the moving party." *Salem Radio Representatives, Inc. v. Can Tel Mkt. Support Group*, 114 F. Supp. 2d 553, 558 (N.D. Tex. 2000); *Sanders v. State St. Bank & Trust Co.*, 813 F.

---

[4] Plaintiffs presumably seek relief beyond the problems they individually experienced with the FHA facility.  In their complaint, they ask the Court to order Defendant to "provide migrant farm worker housing that is free of conditions that affect their safety and health."  Also, some of the Plaintiffs intend to rent units from FHA in future years.

[5] The argument assumes that trial would be scheduled during the off-season when the witnesses would be at their permanent residences, relatively close to Laredo.  Neither Defendant nor Plaintiffs address the possibility of scheduling trial during the work season.  Assuming that they intend to return to Floydada or the Lubbock area, Plaintiffs and their witnesses would be required to travel significantly less if trial were in Lubbock.  However, given that Plaintiffs and their witnesses are migrant workers, their whereabouts during the work season is probably unpredictable.  Also, Plaintiffs mention that it would be "very difficult" for them to take time off from work because they rely heavily on a short period of seasonal work and wages to support their families for the entire year.

Supp. 529, 535 (S.D. Tex. 1993). Here, a transfer would appear to effect such a shift, and Plaintiffs appear to be less able to bear the burden of that shift.  They are indigent, and all have submitted Affidavits to Proceed without prepayment of fees, which were granted by the Court.  Plaintiffs claim that their witnesses, also all migrant workers, are indigent.  Defendant, by contrast, is a governmental entity.  In *Sanders*, the court found that although the moving party's "costs in total dollars" of trying the case in Galveston would exceed plaintiffs' costs of trying it in Defendant's desired venue, retaining the case in Galveston would be less burdensome on the movant than transferring would be on plaintiffs, "in relation to the means possessed by the respective parties."  *Id*.  Here, given Plaintiffs' indigence, traveling to Lubbock would probably be far more burdensome on Plaintiffs and their witnesses than traveling to Laredo would be on Defendants.

### All Other Practical Problems

Defendant argues that Lubbock is a larger city than Laredo, making travel to it more practical and convenient than to Laredo. However, like Lubbock, Laredo also has "plenty of accommodations and an international airport servicing major airlines." Curiously, Defendants also offer that the Texas Tech University School of Law library and meeting facilities make Lubbock a more

practical forum.  Why the parties would need a library during trial is unexplained, especially in this era of electronic research, which has made libraries almost obsolete.

## Public Interest Factors

### Administrative Difficulties

Defendant argues that the Northern District has a less congested docket than the Southern District, and thus venue would be more favorable in the Northern District.  Admittedly, the Laredo Division has an unusually large criminal docket.  Over 1400 criminal cases have been filed in this Division this year already.  It is not clear, however, which party is more affected by this factor.  One would generally assume that Plaintiffs rather than Defendants would prefer an earlier trial, which would more likely be in Lubbock rather than Laredo.  Yet it is Plaintiffs who seek the Laredo venue.

### Local Interest in Having Local Issues Decided at Home

Defendant argues that Lubbock has a strong interest in this case, because the FHA facility is located only sixty miles away, and Lubbock is an agricultural community dependent upon migrant farm workers.  Plaintiffs argue that 80,000 migrant workers live in the Rio Grande Valley in the Southern District giving this district a substantial interest in issues affecting migrant workers.  However, because the case arises out of events

11

occurring in the Lubbock area, this factor weighs more in favor of Defendant.  *See In re Volkswagen*, 371 F.3d at 206 (favoring the venue in which auto accident giving rise to the litigation occurred and where the entirety of witnesses could be located).

### Migrant Worker Rights

The public interest in vindicating migrant worker rights favors venue in Laredo.  In *Aguero*, this Court observed: "It is well known that many migrant laborers do not have the financial resources necessary to prosecute a claim hundreds of miles from home."  481 F. Supp. at 1275.  Requiring plaintiffs to do so "would seriously dilute the Congressional effort to protect migrant workers."  *Id*.  *Aguero* involved claims brought by plaintiffs under the Wagner-Peyser Act, which was "intended to [protect] those employees who shift about the country to meet the needs of those employers who voluntarily use the resources of the federal government to secure workers."  *Id*. (citing *Gomez v. Fla. State Employment Serv.*, 417 F.2d 569, 571-72 (5th Cir. 1969)).

Similarly, Congress clearly intended AWPA to protect migrant workers, and courts have found that those protections are best facilitated by a "liberal construction of venue."  *Stewart v. Woods*, 730 F. Supp. 1096, 1097 n.1 (M.D. Fla. 1990).  *See also Flores v. Triumph Seed Co.*, 2004 WL 1950325 at *1 (S.D. Tex. July 27, 2004); *Islas v. Adams*, 1999 WL 893842 at * 3 (S.D. Tex. May

7, 1999).  In *Stewart*, the Court found that the AWPA conferred venue coextensive with personal jurisdiction for any private action brought under the Act.  730 F. Supp. at 1097.  "Persons whose occupation is, by definition, migrant would be placed at considerable disadvantage in redressing their rights if they were forced to return to the judicial district in which the offending party resides."  *Stewart*, 730 F. Supp. at 1097 n.1.  A number of courts have followed *Stewart*'s lead.  See *Gonsalez Moreno v. Milk Train, Inc.*, 182 F. Supp.2d 590, 597 (W.D. Tex. 2002); *Astorga v. Connleaf, Inc.*, 962 F. Supp. 93, 96 (W.D. Tex. 1996); *Villabos v. N.C. Growers Ass'n, Inc.*, 42 F. Supp.2d 131, 141-42 (D. P.R. 1999).  Thus, there is a strong Congressional intent and public interest in preserving a plaintiff's choice of forum, so long as venue is proper.

## Conclusion

Defendant has not satisfied its burden of showing that the balance of *In Re Volkswagen AG* factors weighs in its favor. Although a Lubbock venue is more convenient to Defendant and its witnesses, has more of a localized interest in the litigation, and has a less congested docket, these factors do not outweigh Plaintiffs' concerns.  Plaintiffs and their witnesses would similarly be inconvenienced if the case were transferred to Lubbock, and Plaintiffs would be less likely to avail themselves

13

of their rights under the AWPA.  Also, Defendants have not shown that they are inconvenienced in securing witnesses or in access to sources of proof.  The Motion to Transfer Venue is DENIED.

DONE at Laredo, Texas, this 16th day of July, 2005.

_____
George P. Kazen
United States District Judge